# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| IN RE: | Chapter 11 |
| SCARBOROUGH-ST. JAMES CORPORATION, | Bankr. Case No. 15-10625-LSS |
| Debtor. | |
| SCARBOROUGH-ST. JAMES CORPORATION, | |
| Appellant, | Civ. No. 15-809-RGA |
| v. | |
| 67500 SOUTH MAIN STREET, RICHMOND, LLC, | |
| Appellee. | |

## MEMORANDUM

Ian Connor Bifferato, Esq., Thomas F. Driscoll III, Esq., Bifferato LLC, Wilmington, DE; and Michael T. Conway, Esq., LeClairRyan, New York, NY, attorneys for Appellant Scarborough-St. James Corporation.

William D. Sullivan, Esq., William A. Hazeltine, Esq., Sullivan Hazeltine Allinson LLC, Wilmington, DE; and Jeffrey Miller, Esq., Thomas A. Draghi, Esq., Eric G. Waxman III, Esq., Westerman Ball Ederer Miller Zucker & Sharfstein, LLP, Uniondale, NY, attorneys for Appellee 67500 South Main Street, Richmond, LLC.

July 12, 2016

*/s/ Richard G. Andrews*
**ANDREWS, UNITED STATES DISTRICT JUDGE:**

Presently before the Court is an appeal by Debtor Scarborough-St. James Corporation from a final order (B.D.I. 63)[1] (the "Surrender Order") of the United States Bankruptcy Court for the District of Delaware granting the motion (B.D.I. 54) (the "Surrender Motion") of appellee, 67500 South Main Street, Richmond, LLC ("Landlord"), for an order deeming a nonresidential property lease terminated pursuant to § 365(d)(4) of the Bankruptcy Code and directing Debtor to immediately surrender possession of the property to Landlord. The appeal is fully briefed. The briefs fully and adequately set forth the parties' arguments, and the Court does not believe that oral argument would be helpful. *See* Fed. R. Bankr. Proc. 8019.

## I. BACKGROUND

The relevant facts are not disputed.[2] Since 2008, Debtor and Landlord have been litigating various provisions in a 2006 lease between Richmond Realty Limited Partnership, as landlord, and MCANY of Richmond Fund II Limited Partnership, as tenant, relating to a shopping center located in Richmond, Michigan. (D.I. 10 at A3-23). Neither Debtor nor Landlord were original parties to the lease. Landlord became the landlord under the lease (and owner of the shopping center) by foreclosing upon its secured position in the lease in October 2008. (B.D.I. 27 at ¶ 17). In March 2015, Debtor purchased all of MCANY's rights and interests under the lease. (*Id.* at ¶ 8). Prior to the purchase of MCANY's rights, Debtor managed the property and collected rent from subtenants pursuant to a servicing agreement between MCANY and Debtor. (*Id.* at ¶ 12). Landlord has received no rent since acquiring the shopping

---

[1] The docket of the chapter 11 case, *In re Scarborough-St. James Corp.*, Case No. 15-10625 (LSS) (Bankr. D. Del.), is cited herein as "B.D.I. __."

[2] *See* B.D.I. 56 (providing extensive discussion of prepetition disputes between the parties and procedural posture of bankruptcy case).

1

center. (B.D.I. 16 at ¶ 3).

## A. The Arbitration and New York Litigation

The disagreements between Debtor and Landlord regarding the lease led to significant prepetition litigation in both the New York and Michigan state courts. Arbitration proceedings in 2013 and 2014 led to the issuance of a final award on January 27, 2014, in which the arbitrator ruled that the lease remained valid, and Debtor owed Landlord rent of $652,911.96 for the period from November 2008 through December 2012, and that rent should be paid within 60 days of the final award. (B.D.I. 16, Ex. A, ex. 2 at 2-3). The arbitrator further held that calculation of rent for the year 2013 and subsequent years should be calculated by the same method used in the final award. (*Id.*) Debtor did not pay as directed.

Landlord subsequently filed a motion to confirm the final award in the Supreme Court of the State of New York. Debtor opposed the motion and filed a cross-motion to vacate or modify the final award. On August 4, 2014, the Supreme Court issued a decision and order confirming the final award and denying the Debtor's motion to vacate or modify it. On December 1, 2014, the Supreme Court re-issued its August ruling and directed the Clerk to enter judgment on the final award in favor of Landlord. (B.D.I. 27 at ¶ 7). Thereafter, on March 16, 2015, the Supreme Court issued judgment in favor of Landlord in the amount of $720,204.80. (B.D.I. 16 at ¶ 5). On April 14, 2015, Debtor appealed but did not seek a stay of the judgment pending appeal. (B.D.I. 27, ¶ 10). On January 28, 2016, the decision and order was affirmed on appeal in all respects. (*See* D.I. 15).

## B. The Termination Notice and the Michigan Litigation

In the time after the final award, but prior to the judgment, Landlord sent a demand letter to Debtor and MCANY notifying them of an "Event of Default" under the lease and demanding

payment of the 2013 rent in the amount of $290,612.15 within 60 days of the letter. (*Id.* at Ex. A, ex. 4). Receiving no response, on May 20, 2014, Landlord sent a lease termination notice. (*Id.* at Ex. A, ex. 5). On August 20, 2014, Landlord sent MCANY and Debtor a demand for immediate possession and turnover of all books and records with the subtenants and all keys to the property. (*Id.* at Ex. A, ex. 6). Debtor did not comply with this demand. On September 20, 2014, Landlord filed a complaint in Michigan state court seeking a judgment of immediate possession of the shopping center and an eviction order. (B.D.I. 43, Ex. D).

### C. The Bankruptcy Proceedings

While the Michigan litigation was pending, on March 19, 2015 (the "Petition Date"), Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. Debtor listed the lease on Schedule G of its Schedules of Assets and Liabilities – Executory Contracts and Unexpired Leases. (*See* B.D.I. 32). On April 7, 2015, Landlord filed a motion for relief from the automatic stay provision of § 362(d) in order to proceed with the Michigan litigation. (B.D.I. 16). The Bankruptcy Court granted relief from the automatic stay, which permitted Landlord to proceed with the Michigan litigation. (B.D.I. 56, 57).

Debtor did not file a motion to assume or reject the lease within the 120-day period prescribed by § 365(d)(4) of the Bankruptcy Code, nor did it move for any extension of the deadline to assume or reject the lease.[3] On July 17, 2015, the 120-day period expired. On July 29, 2015, Landlord filed the Surrender Motion. Landlord asserted that, based on Debtor's failure to assume or reject the lease and failure to move for an extension of the deadline, the lease was deemed rejected as a matter of law pursuant to a straightforward application of § 365(d)(4), and

---

[3] The court may, for cause, extend the 120-day period to assume or reject for an additional 90 days upon a motion by a trustee, debtor, or lessor. Any subsequent extensions may be granted only upon written consent of the lessor. 11 U.S.C. § 365(d)(4)(B).

3

the Debtor was therefore required to immediately surrender the shopping center to the Landlord. (*See* B.D.I. 54 at 2).[4]

In response, Debtor filed (i) a motion to dismiss its chapter 11 case on August 19, 2015 (B.D.I. 58), and (ii) an opposition to the Surrender Motion on August 20, 2015 (B.D.I. 60). Debtor argued in its opposition that, in light of the pending motion to dismiss the chapter 11 case, the issue of whether the lease could be assumed was no longer relevant, and the Surrender Motion was therefore moot. (B.D.I. 60 at 1). Debtor argued that even if the Surrender Motion was not moot, it should be "denied in that it ignores the realities of this case." (*Id.*). Debtor argued that the "real issue" in assuming the lease was the issue of any default and cure under the lease – issues which, Debtor contended, were still being litigated in the New York litigation due to its pending appeal of the judgment. (*Id.* at 2). Debtor further argued that, instead of deeming the lease rejected, the Bankruptcy Court should allow the Debtor another opportunity to file a motion to assume the lease because in similar factual situations, courts have held that a motion to assume a lease can be filed after the 120-day period has expired "so long as the Debtor makes it clear that it intends to assume the lease during that pr[e]scribed period." (*See id.* at 2-3). In support of its position, Debtor cited a case from the Bankruptcy Court for the District of Massachusetts, which expressed agreement "with those courts that see no command in subsection (d)(4) that a motion is to be filed within the prescribed period, and require only timely and unequivocal statements to the lessor of intention to assume." *In re The Casual Male Corp.*,

---

[4] Landlord ultimately takes the position that the lease was terminated prior to the Petition Date, Debtor's continued possession of the shopping center was unlawful, and Debtor would have been evicted from the shopping center but for its chapter 11 filing. Solely for purposes of the Surrender Motion, however, Landlord assumed that the lease (a) existed as of the Petition Date, and (b) provided an alternate basis by which the Bankruptcy Court could recognize that the lease was breached and terminate possession of the shopping center as a matter of law. (*See* B.D.I. 54 at 3, n.7).

4

120 B.R. 256, 260 (Bankr. D. Mass 1990). Debtor argued that it made its intent to assume the lease clear from the outset of its chapter 11 case, and such intent satisfied the statute. (*See id.* at 2).

Debtor further argued that under the Third Circuit's ruling in the *Channel* case, the Bankruptcy Court had authority to extend the 120-day period retroactively if the failure to extend would be inconsistent with the intent of the Bankruptcy Code and would result in a windfall to the landlord. (*See id.* (citing *See Legacy, Ltd. v. Channel Home Centers, Inc.*, 1991 WL 497171 at *7 (D.N.J. Dec. 12, 1991), *aff'd,* 989 F.2d 682 (3d Cir. 1993)). Debtor argued that its only asset was the lease, and "[i]f the Debtor were not able to assume this [l]ease there would be no estate to administer," which would be inconsistent with the Bankruptcy Code's purpose of allowing a debtor to reorganize. (*See id.* at 4).

Following briefing and oral argument, on August 27, 2015, the Bankruptcy Court granted the Surrender Motion. (B.D.I. 63). In so ruling, the Bankruptcy Court found it could not retroactively extend the 120-day deadline based on Debtor's failure to file a motion for such relief: "Section 365(d)(4) says I can only extend the time on a motion, and none was brought. So the only possibility that the debtor relies on is that the debtor has already assumed the lease, subject to court approval." (*See* D.I. 10 at A89, 8/27/15 Hr'g. Tr. at 41:17-23). The Bankruptcy Court rejected Debtor's argument that it had satisfied § 365(d)(4) under *Casual Male* by virtue of its counsel's statements regarding Debtor's intent to assume the lease. The Bankruptcy Court declined to decide whether it was in agreement with *Casual Male* but observed the factual and procedural differences of that case, and noted that the Debtor, in any event, had failed to meet the standard set in that case. (*See id.* at 41:24-42:2). The Bankruptcy Court found that any statements by Debtor's counsel with respect to the lease did not satisfy the standard of a timely

5

and unequivocal statement of intent to assume:

> [T]hose statements were a contingent desire to assume the lease, assuming all issues between the parties are decided in the [Debtor's] favor; specifically, with respect to the amount of the rent owed. There is no evidence, as there was in *Casual Male*, that the debtor itself, as opposed to counsel, ever made statements to the landlord that it wanted to unequivocally assume the lease. In fact, there was no evidence at all from the debtor today. On this record I cannot find, as the Court did in *Casual Male*, that the debtor's conduct prior to the deadline in 365(d)(4) unquestionably demonstrated to the landlord their intention and agreement to assume and assign the lease, or here, assume the lease, subject to court approval.

(*Id.* at 42:6-21). Having rejected Debtor's argument that it had demonstrated its unequivocal intent to assume the lease, the Bankruptcy Court entered the Surrender Order, deeming the lease rejected pursuant to § 365(d)(4) and directing Debtor to immediately surrender the shopping center to Landlord. (*See* B.D.I. 63).

Thereafter, on September 24, 2015, the Bankruptcy Court granted Debtor's motion to dismiss its chapter 11 case (B.D.I. 91, 92) subject to certain conditions. The dismissal order provided that the order granting relief from the automatic stay and the Surrender Order would survive dismissal of the chapter 11 case and further provided that Debtor was prohibited from filing a petition for relief under any chapter of the Bankruptcy Code on or before January 24, 2016. (*See* B.D.I. 92).

## II. CONTENTIONS

On appeal, Debtor asserts that, as an initial matter, the Surrender Motion should have been "denied as moot," in light of Debtor's motion to dismiss the chapter 11 case, because "the issue of whether the [l]ease in question should be or can be assumed was no longer relevant." (D.I. 8 at 2). Debtor further argues, based on the *Casual Male* case, that "the Bankruptcy Court improperly held that the [l]ease was deemed rejected, notwithstanding the fact that the Debtor had unequivocally indicated from the outset of the case that it intended to assume the [l]ease."

6

(*See id.*) Debtor further argues that the Bankruptcy Court should have rejected strict construction of § 365(d)(4), and granted retroactive extension of the deadline, because deeming the lease rejected "ignored the realities of this case" and resulted in a windfall for the Landlord to the detriment of the creditors. (*Id.*) Debtor thus urges the Court to reverse the Surrender Order "[g]iven the flawed reasoning of the Bankruptcy Court and the status of the case." (*Id.* at 3).

Landlord disputes Debtor's argument that the motion to dismiss rendered the Surrender Motion moot. (*See* D.I. 9 at 20-21). According to Landlord, Debtor's argument that it demonstrated its intent to assume through statements by counsel is unsupported by the record, and Debtor's argument that an indication of intent to assume can satisfy the requirements of § 365(d)(4) is unsupported by the plain language of the statute. (*See id.* at 3; 11-12). Landlord argues that even if such unequivocal statements were made, the *Casual Male* holding is incorrect, as "unequivocal statements of intent to assume do not constitute a lease assumption under the Bankruptcy Code. Rather, a motion and court order are required." (*Id.*) Finally, Landlord argues that retroactive extension of the deadline is not permitted under the statute, and in light of Debtor's failure to file a motion to assume or a motion to extend the deadline, the Surrender Order must be affirmed. (*Id.* at 18-19 & n. 27).

## III. JURISDICTION AND STANDARD OF REVIEW

The Court has jurisdiction to hear an appeal from a final judgment of the Bankruptcy Court pursuant to 28 U.S.C. § 158(a)(1). On appeal from an order issued by the Bankruptcy Court, a district court "review[s] the Bankruptcy Court's factual findings under a clearly erroneous standard and exercise[s] plenary review over legal issues." *In re Trans World Airlines, Inc.*, 145 F.3d 124, 130 (3d Cir. 1998).

## IV. DISCUSSION

The Bankruptcy Code provides that "the trustee, subject to the court's approval, may

assume or reject any executory contract or unexpired lease of the debtor." 11 U.S.C. § 365(a). This provision is modified by § 365(d)(4) of the Bankruptcy Code, which provides:

> [A]n unexpired lease of nonresidential real property under which the debtor is the lessee shall be deemed rejected, and the trustee shall immediately surrender that nonresidential property to the lessor, if the trustee does not assume or reject the unexpired lease by the earlier of –
> (i) the date that is 120 days after the date of the order for relief; or
> (ii) the date of the entry of an order confirming a plan.

11 U.S.C. § 365(d)(4)(A). Section 365(d)(4)(B) further provides that the Bankruptcy Court "may extend the period determined under subparagraph (A), *prior to the expiration of the 120-day period*, for 90 days on the motion of the trustee or lessor for cause." 11 U.S.C. § 365(d)(4)(B) (emphasis added). However, any subsequent extensions may be granted only upon prior written consent of the lessor. *See id.* Here, there is no dispute that no motion to assume was filed before the expiration of the 120-day period, no motion for an extension of the deadline was made, and no plan has been confirmed in this case. Under a straightforward application of the statute, the Bankruptcy Court correctly determined that the lease must be deemed rejected pursuant to § 365(d)(4) and that immediate surrender of the shopping center was required.

## A. The Bankruptcy Court Properly Declined to Dismiss the Surrender Motion As Moot

Debtor argues that, with respect to the relief requested in the Surrender Motion, "this issue became moot given the request to dismiss the Bankruptcy Case." (D.I. 8 at 7). Thus, Debtor argues that "the Bankruptcy Court erred in not simply dismissing the case without reaching the issue of rejection beforehand . . ." (*Id.* at 8). Landlord asserts this argument is meritless because Debtor did not have a unilateral right to dismiss its case under the Bankruptcy Code; rather, the Bankruptcy Court was required to determine whether dismissal was in the best

8

interest of Debtor's creditors pursuant to § 1112(b).[5] (*See* D.I. 9 at 21). Landlord further notes that Debtor's motion to dismiss was filed on August 19, 2015 – after the § 365(d)(4) deadline expired on July 17, 2015 and after the order granting relief from the automatic stay was entered on August 18, 2105 – and argues that "[e]vents which occur after the expiration of the statutory deadline cannot moot the obligation to comply with the deadline. If that was the case, then the statutory requirements could be easily evaded." *Id.*

When a court's decision on a pending motion will be "hypothetical or academic" or without any "practical significance," Black's Law Dictionary 1099 (9th ed. 2009), then the motion is moot. *See, e.g., Oparaji v. N.E. AutoMarine Terminal*, 437 F. App'x. 190, 193 n.1 (3d Cir. 2001) ("A motion is moot when a court is unable to fashion any form of meaningful relief"). Here, the Debtor did not have a unilateral right to dismiss its case, and its motion to dismiss had not yet been fully briefed or adjudicated. Landlord's request for relief pursuant to the automatic termination provision of § 365(d)(4) was not rendered moot by virtue of the pending motion to dismiss, as the Bankruptcy Court was able to award meaningful relief to Landlord. The Court thus finds no error in the Bankruptcy Court's consideration of the relief requested in the Surrender Motion.

## B. The Bankruptcy Court Properly Held Debtor's Intent to Assume Did Not Satisfy § 365(d)(4)

Debtor argues that its counsel clearly indicated Debtor's intent to assume the lease, and contest any cure amount, based on the result in the New York litigation, although "the issue of

---

[5] Section 1112(b)(1) of the Bankruptcy Code provides, in relevant part, that "on request of a party in interest, and after notice and a hearing, the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause ..." 11 U.S.C. § 1112(b)(1). Section 1112(b)(2) further provides that the court may not dismiss a case if the court finds that dismissing the case is not in the best interests of creditors and the estate. *See* 11 U.S.C. § 1112(b)(2).

9

whether there was a [l]ease to assume and ... whether there is any amount owed to [Landlord] as a cure payment ... clearly overshadow[ed] the issue of when the Debtor would formally bring a motion to assume." (*See* D.I. 8 at 6). Debtor thus appears to argue that the lack of resolution of these issues somehow precluded it from moving to assume the lease, and that the Bankruptcy Court erred in "ignor[ing] the realities of this case." (*Id.* at 2). As the Bankruptcy Court observed, however, the pending state litigation did not prevent the Debtor from timely moving to assume the lease. (*See* D.I. 10 at A67-69, 8/27/15 Hr'g. Tr. at 19:24-20:8 & 21:15-21:24). Debtor could have moved to assume the lease, at which point the Bankruptcy Court would have addressed cure issues (*id.* at A64, 16:4-5). As the Bankruptcy Court observed:

> The debtor really suggests ... that it's in an unfortunate situation because of a confluence of events that have prevented it from making decisions. But I find that these situations are a circumstance of the rulings that the debtor received in the arbitration that they insisted upon, the affirmance of that decision by the New York Supreme Court, and the timing that the debtor has with respect to when an appeal could be decided on the issue.

(*Id.* at A89, 41:8-15). This situation, as the Bankruptcy Court noted, "does not strip other parties of their rights." (*Id.* A89, 41:15-16).

Debtor contends, however, that "in similar factual situations, courts have held that it is this indication of an intent to assume that is required by [§] 365(d) within 120 days, not the motion or a decision on the motion to assume." (*See* D.I. 8 at 6). In support of this argument, Debtor cites the *Casual Male* decision, in which the court expressed its agreement "with those courts that see no command in subsection (d)(4) that a motion is to be filed within the prescribed period, and require only timely and unequivocal statements to the lessor of intention to assume." *Casual Male*, 120 B.R. at 260. However, the *Casual Male* case does not appear to present a "similar factual situation."

There, a debtor timely moved to extend its deadline to assume or reject leases, and that

10

request was granted by the bankruptcy court. *Casual Male*, 120 B.R. at 258. The debtor then scheduled an auction with respect to a number of its leases. *See id.* One landlord, Evergreen, received notice of the auction and attended. *Id.* At the auction, a purchaser made an offer to acquire several leases, including Evergreen's lease, and debtor announced the terms of the offer at the auction. *See id.* Evergreen's representatives negotiated with the purchaser, stating that Evergreen would deal with the proposed assignment in the same manner as a lease assignment outside the bankruptcy context. *See id.* at 258-59. Evergreen and the purchaser exchanged information thereafter toward litigating or resolving adequate assurance issues. *Id.* Several weeks after the auction, debtor filed a motion to assume and assign the lease, but the motion was filed outside of the § 365(d)(4) statutory period (as extended by a prior extension order). Although debtor had previously filed a motion to assume and assign a number of other leases, debtor's counsel mistakenly failed to include Evergreen's lease in that motion. *See id.* at 259. Evergreen objected to the motion to assume its lease on the basis that debtor had failed to assume the lease prior to the expiration of the § 365(d)(4) deadline. *See id.* The motion to assume was initially denied as untimely. *See id.* Debtor then sought relief to amend the extension order pursuant to Rule 60(b) of the Federal Rules of Civil Procedure, made applicable by Federal Rule of Bankruptcy Procedure 9024. The court granted debtor relief, finding that debtor's actions and statements were sufficient to support a determination that assumption under the statute was satisfied. *Id.* at 262.

The *Casual Male* case differs from the instant case both factually and procedurally. In considering Debtor's argument that § 365(d)(4) requires only a timely and unequivocal statement of intention to assume – as opposed to a motion to assume – the Bankruptcy Court noted that this case was in a different posture than the *Casual Male* case. The court in *Casual Male* considered

11

a motion for affirmative relief brought by the debtor, whereas in the instant case, the Bankruptcy Court was faced with a Landlord's motion to surrender, well after the expiration of the deadline, and in the absence of any request for relief from the Debtor. The Bankruptcy Court also expressed hesitation as to whether it agreed with the reasoning in *Casual Male*. (*See* D.I. 10 at A71, 23:12-23:19; A89, 41:24-25). Even if it would have agreed with *Casual Male*, the Bankruptcy Court found that the Debtor had failed to satisfy the timely and unequivocal statement standard set forth in that case. The Bankruptcy Court observed that Debtor's counsel's statements with respect to assumption of the lease were "at best ... a contingent desire to assume the lease, assuming all issues between the parties are decided in the [Debtor's] favor." (*See id.* at A90). Thus, Debtor's intent to assume was always contingent on the outcome of the state litigation – the timing of which was uncertain – notwithstanding the statutory deadline under § 365(d)(4). The Bankruptcy Court further noted that, unlike *Casual Male*, Debtor had failed to cite to the record or submit any evidence of a timely and unequivocal statement to the Landlord by the Debtor itself – as opposed to Debtor's counsel – regarding Debtor's intention to assume the lease. (*Id.* at A90, 42:17-21) ("On this record, I cannot find, as the Court did in *Casual Male*, that the debtor's conduct prior to the deadline in 365(d)(4) unquestionably demonstrated ... [Debtor's] intention and agreement to assume and assign the lease, or here, assume the lease, subject to court approval.").

    The Court agrees with the Bankruptcy Court's conclusion. I do not need to decide whether *Casual Male* correctly states the law. I agree with the Bankruptcy Court that there was no evidence in the record of Debtor's timely and unequivocal statement to Landlord of Debtor's intent to assume the lease. Thus, the Bankruptcy Court correctly concluded that Debtor had not satisfied the requirements of § 365(d)(4).

12

## C. The Bankruptcy Court Properly Denied Debtor's Request to Retroactively Extend the Statutory Deadline

The Bankruptcy Court correctly concluded that it cannot retroactively extend the deadline to assume or reject a lease under the statute. Because the *Casual Male* court found that the debtor acted timely to assume the lease at issue, it did not reach the issue of whether to extend the deadline retroactively. *See Casual Male*, 120 B.R. at 263. The only other case cited by Debtor is the *Channel* case. *See Channel Home Centers, Inc.*, 1991 WL 497171 at *7 (D.N.J. Dec. 12, 1991). In that case, the issue was whether the bankruptcy court could grant a second timely extension of the debtor's time to assume or reject a lease under a prior version of the statute. There, both of the extensions "were requested and granted before the relevant period expired." *Channel*, 989 F.2d at 688 n.11. Here, it is undisputed that the 120-day period expired without the Debtor requesting, and without the Bankruptcy Court granting, an extension of time to assume or reject the lease. Thus, the *Channel* case does not require a different result than the Bankruptcy Court reached here.

Notwithstanding these different facts, Debtor argues that *Channel* stands for the Third Circuit's rejection of a literal construction of § 365(d)(4) where a literal construction would be contrary to justice and result in a windfall to one creditor to the detriment of other creditors. (*See* B.D.I. 60 at 4-5). However, the concerns raised in *Channel* are simply not implicated in this case. Debtor's schedules reflected few creditors.[6] No committee of unsecured creditors was appointed, nor did any creditor other than Landlord participate in the case. (*See id.* at n.4). As the Bankruptcy Court observed, this chapter 11 case was essentially "a two-party dispute

---

[6] Debtor's schedules listed no secured creditors. (*See* B.D.I. 4, Sch. D). Debtor listed one creditor as having an unsecured priority claim in the amount of $47,218.29. (*Id.* at Sch. E). This creditor also held 50.75% of Debtor's equity. (*See* B.D.I. 3). Debtor listed twelve unsecured creditors with total liquidated debt of $740,323.18, of which $720,204.80 was Landlord's claim. (B.D.I. 4, Sch. F). Six of the remaining creditors were owed less than $200. (*Id.*)

13

between Debtor and Landlord regarding which of the parties is entitled to the rents from the shopping center, which are Debtor's only asset of any real value." (*See* B.D.I. 91 at 2).

Moreover, the *Channel* case considered a prior version of the statute. Section 365(d)(4) was amended in 2005 for the purpose of limiting courts' discretion in applying the 120-day time period for assuming or rejecting a lease. *See, e.g., In re Eastman Kodak Co.*, 495 B.R. 618, 623 (Bankr. S.D.N.Y. 2013) (" '[The amendment of § 365(d)(4)] is designed to remove the bankruptcy judge's discretion to grant extensions of the time for the retail debtor to decide whether to assume or reject a lease after a maximum possible period of 210 days from the time of entry of the order of relief.'") (quoting H.R. Rep. No. 109-31, 109th Cong., 1st Sess. 153 (2005)). Numerous courts have held that the period to assume or reject a lease cannot be extended after the expiration of the statutory period. *See, e.g., In re Southampton Yen Rest. Grp. LLC*, 2009 WL 3925563, at *3 (Bankr. S.D.N.Y. Nov. 16, 2009) (reviewing case law and holding "the Debtor failed to timely file a motion to extend the time to assume the lease and the 120-day period contemplated by § 365(d)(4) has expired. Because this Court cannot retroactively extend the deadline under the statute, the lease is deemed rejected as a matter of law and the Debtor must immediately surrender the property"). Thus, the Court finds no error in the Bankruptcy Court's conclusion, which is consistent with the language of the statute, the legislative intent underlying the statute, and post-amendment case law.

## V. CONCLUSION

For the foregoing reasons, the Surrender Order is affirmed. Landlord's Motion for Leave to File a Sur-reply Brief (D.I. 12) is dismissed as moot. An appropriate order shall issue.

14